UNITED STATES DISTRICT COURT

                      DISTRICT OF CONNECTICUT


**Lauren Kimbro,**
        **-Plaintiff**


        -v-                              CIVIL 3:01CV01676(DJS)(TPS)


**I.C. System, Inc.,**
        **-Defendants**


        **RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

    The plaintiff, Lauren Kimbro, has brought this action against the defendant, I.C. System, Inc. (hereafter "I.C.S."), alleging that the defendant violated the Fair Debt Collection Practices Act (hereafter "FDCPA") and the Connecticut Unfair Trade Practices Act. The case is before the court pursuant to 15 U.S.C. § 1692 and 28 U.S.C. § 1331 and § 1367.  The plaintiff's motion for summary judgment is pending.  The motion **(Dkt. #35)** is **DENIED**.

    The standards governing summary judgment are well-settled. Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is one "that might affect the outcome of the suit under the governing

law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of demonstrating a lack of genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for the motion."); FDIC v. Giammettei, 34 F.3d 51, 54 (2d Cir. 1994).  If the moving party bears the ultimate burden of proof at trial, the standard is more stringent.  See Celotex, 477 U.S. at 331 (Brennan, J., dissenting); Nat'l State Bank v. Fed. Reserve Bank, 979 F.2d 1579, 1582 (3d Cir. 1992)(bank alleging breach of duty of care has to clearly establish failure on defendant's part in handling of checks).  The Court must view all the evidence presented by the moving party in light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).  If evidence exists from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper.  Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

Once the moving party has satisfied her burden of production, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of material fact.  Anderson, 477 U.S. at 250.  The nonmoving party must identify specific facts requiring trial.  Celotex Corp., 477 U.S. at 324 ("Rule 56(e) . . . requires the moving party to go beyond the pleadings and by her own

affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial'"); Anderson, 477 U.S. at 248 (a nonmoving party "may not rest upon the mere allegations or denials of his pleadings but . . . must set forth specific facts showing that there is a genuine issue for trial"); Trebor Sportswear Co. v. The LTD. Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249 (citations omitted). See also Dister v. Cont'l Group, Inc., 896 F.2d 1108, 1114-1115 (2d Cir. 1988)(the nonmoving party must present "concrete evidence from which a reasonable juror could return a verdict in [plaintiff's] favor").

From the record, the following material facts are undisputed. The defendant, I.C.S., based in St. Paul, Minnesota, is a debt collector within the FDCPA seeking to collect a delinquent balance owed on a Providian credit card by plaintiff Lauren Kimbro, a resident of New Haven, Connecticut. (Pl.'s Local Rule 9(c)1 Statement, at 1). After sending plaintiff letters in February and March of 2001 requesting that she make arrangements to clear her delinquent account, I.C.S. sent an undated letter (hereafter "Letter 283") on or about April 19, 2001 headlined: "UP TO 50% OFF YOUR BILL!!!!. (Id.). The text of the letter read in relevant part:

> "That's right! If you pay just 50% of your current balance owed on the Providian account referenced above, we will consider the account SETTLED and Providian will report to the credit bureaus that your balance owing is $0.00, if you act NOW!
>
> Interested in the deal but don't have that kind of cash available right now? No problem! With acceptable payment arrangements we can stop future over-limit and late fees and reduce or stop finance charges. Please call us immediately . . . to make arrangements.
>
> Don't let this opportunity pass you by! You must call within 10 days of the date of this letter to take advantage of one of these great offers.

(Def.'s Resp. to Pl.'s Interrog. 1, Ex. 3). Plaintiff moves for summary judgment as to liability alone, claiming that I.C.S.'s Letter 283 was (1) objectively false, and (2) deceptive or misleading under the FDCPA.

**A. The claim that Letter 283 violates the FDCPA because it was false.**

The first inquiry is whether summary judgment is appropriate on the plaintiff's claim that the 50% discount offer made in the undated Letter 283 was false under the FDCPA. The court finds that it is not.

The FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Claims under the FDCPA are evaluated under the "least sophisticated consumer" standard.

4

Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993). This standard ensures that the FDCPA protects all consumers, the gullible as well as the shrewd, and is consistent with the norms that courts have traditionally applied in consumer protection law. Id. The "least sophisticated consumer" is an ignorant, unthinking, credulous person of below-average intelligence. Id. at 1318-19. However, "[i]t should be emphasized that in crafting a norm that protects the naive and the credulous the courts have carefully preserved the concept of reasonableness." Id. at 1319. See also Rosa v. Gaynor, 784 F. Supp. 1, 3 (D. Conn. 1989) (FDCPA "does not extend to every bizarre or idiosyncratic interpretation" of a collection notice but "does reach a reasonable interpretation of a notice by even the least sophisticated"). "[E]ven the 'least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." Clomon, 988 F.2d at 1319.

 Plaintiff argues that I.C.S.'s offer to settle her account for payment of 50% of the current balance was objectively false by asserting a 10-day deadline because the offer was admittedly flexible. (Pl.'s Mem. in Supp. of Summ. J. ¶ 6). Defendant concedes that due to the missing date it would have honored plaintiff's acceptance of the offer had she contacted I.C.S. within a reasonable period after the actual 10-day deadline (Def.'s Resp. to Pl.'s Interrog. 10, annexed to Pl.'s Local Rule 9(c)1

Statement), but disputes her claim that it would have honored any acceptance to the extent it suggests the offer was not genuine and would not have expired after ten days had the letter been dated. (Def.'s Local Rule 9(c)2 Statement ¶ 12).   Here, defendant relies on basic principles of contract law whereby reference to the 10-day period placed an outside limit on when the debtor could bind the collector by accepting the offer. (Def.'s Mem. in Opp'n. to Pl.'s Mot. for Summ. J., at 6).  In setting a time limit on the offer, defendant seeks to establish a point after which it and its client would no longer be bound to honor a particular settlement in such a debt negotiation (Def.'s Mem. in Opp'n. to Pl.'s Mot. for Summ. J., at 7), thus avoiding the difficulties of determining what is a reasonable time for acceptance of an offer which does not terminate by its own terms. See, e.g., Peck v. Edwards, 90 Conn. 669, 674 (1916) ("If the offer does not limit the time for its acceptance, it must be accepted within a reasonable time.").  Taking all inferences in light most favorable to the defendant, the court is not persuaded that a reasonable trier of fact would necessarily conclude that defendant's discretion to accept a settlement beyond the 10-day deadline renders Letter 283 objectively false.

In support of her claim that defendant's offer was false, plaintiff relies on Herbert v. Monterey Financial Servs., Inc., 863 F. Supp. 76 (D. Conn. 1994).  In that case, the court held that the least sophisticated consumer would interpret a letter asserting a

"final demand" prior to the initiation of legal action to mean that the debt collector was affording the debtor one last opportunity to resolve her alleged debt before it took legal action against her, despite subsequent efforts by the debt collector to contact the debtor.  Id. at 80.  The facts in the instant case are distinguishable.  Letter 283 contained no such "final demand," no suggestion of a one-time only offer,[1] and no threat of legal action.  Moreover, plaintiff has provided no evidence from the record, beyond arguments of counsel, that the offer would not be honored by I.C.S. had she paid the 50% amount within 10 days or a reasonable period of time thereafter, nor has she shown that the opportunity to call defendant to work out suitable arrangements had she been unable to make a single lump sum payment was not genuinely available.  I.C.S.'s statements might be false if it intended when it sent the letter to reject plaintiff's payment, or if it actually rejected her payment after she accepted the offer.  Plaintiff did not accept the offer, so she cannot claim the latter; she has provided no proof of the former.  The court therefore believes that a reasonable trier of fact could find the 50% offer in Letter 283 to be genuine.

---

[1] The closing paragraph of Letter 283 specifies that plaintiff "must call within 10 days of the date of this letter to take advantage of <u>one of these great offers</u>." (Def.'s Resp. to Pl.'s Interrog. 1, Ex. 3) (emphasis added).

**B. The claim that Letter 283 was deceptive or misleading.**

The next inquiry is whether summary judgment is appropriate on plaintiff's claim that the undated Letter 283 was deceptive or misleading under the FDCPA. Once again, the court finds that it is not.

Plaintiff first alleges that defendant's Letter 283 was deceptive or misleading as a matter of law because the 10-day deadline was nonexistent thereby creating a false sense of urgency. (Pl.'s Mem. in Supp. of Summ. J. ¶ 4). Creating a false sense of urgency is well-recognized as a deceptive or misleading collection practice under the FDCPA. Schweizer v. Trans Union Corp., 136 F.3d 233, 237 (2d Cir. 1998); Trans World Accounts, Inc. v. F.T.C., 594 F.2d 212, 215 (9th Cir. 1979); Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50106 (Dec. 13, 1988): § 807(10)-2 ("Communication format. A debt collector may not communicate by a format or envelope that misrepresents the nature, purpose, or urgency of the message. It is a violation to send any communication that conveys to the consumer a false sense of urgency.").

Plaintiff claims that the 10-day deadline in Letter 283 is misleading because the 50% offer was in fact available to anyone whose account was 130 to 178 days delinquent. (Pl.'s Mem. in Supp. of Summ. J. ¶ 4). Plaintiff relies on procedures and guidelines

obtained from Providian that are purported to represent the contractual relationship between defendant and its client, a non-party. These guidelines state in relevant part that "[c]ustomers whose accounts are 130 to 178 days delinquent will be offered to settle the account at 50% of the balance or enter into a PPA with incentives to pay." (Pl.'s Local Rule 9(c)1 Statement, Ex. 6 at 2). Plaintiff thus believes that Providian's guidelines for how its agents negotiate settlements are more than a mere authorization and tantamount to an offer in and of themselves. Defendant disputes plaintiff's interpretation as "simply false," noting that she "has not provided any authentication of the document or any competent testimony as to the manner in which the guidelines are actually applied or interpreted." (Def.'s Mem. in Opp'n. to Pl.'s Mot. for Summ. J., at 11 n.2). Without addressing the issue of authentication, the court views both plaintiff's and defendant's competing interpretations of the guidelines in question as plausible. On one hand, the relevant language in the guidelines appears inflexible on its face; on the other, plaintiff is not a party to any contract between Providian and I.C.S., nor is she a beneficiary of it. As such, her understanding of the FDCPA to require an agent to disclose its principal's confidential instructions about levels of compromise would seem to negate the need for collection agencies--and debt negotiations--altogether. As these guidelines are susceptible of two reasonable

interpretations, there exists a triable issue of fact, and summary judgment is improper. <u>Heyman v. Commerce and Industry Insurance Company</u>, 524 F.2d 1317 (2d Cir. 1975).

    Plaintiff next argues that the 10-day deadline created a false sense of urgency because reference to a "special offer" had been made by an auto-voice message defendant allegedly left on plaintiff's home phone some eighteen times over two months before Letter 283 was sent. (Pl.'s Mem. in Supp. of Summ. J. ¶ 4). Here, plaintiff points to the term "HOME AUTO VOICE" denoted on her account in defendant's computer records numerous times between February and April of 2001 (Pl.'s Local Rule 9(c)1 Statement, Ex. 7), as well as the aforementioned Providian guidelines that dictate outbound message scripts.[2] (<u>Id.</u> at Ex. 5). Defendant flatly denies that any such messages were left on plaintiff's answering machine on those dates (Melton Aff. ¶ 19), claiming that plaintiff is basing this contention not on her actual receipt of any such messages but rather a misinterpretation of the term "HOME AUTO VOICE" in its records as an indication that defendant left an automated message on plaintiff's answering machine. (<u>Id.</u> at ¶ 20). To the contrary, defendant contends, the term "HOME AUTO VOICE" reflects that a dialer called plaintiff's home phone, detected an

---

    [2] The script reads: "Hello, this is <Agency>. Please call us as soon as possible at <Agency 800 Number> to discuss our special offer. This is not a sales call." (Pl.'s Local Rule 9(c)1 Statement, Ex. 5 at 2). Defendant questions the authenticity of these guidelines as well. (Def.'s Local 9(c)2 Statement ¶¶ 13-14).

10

answering machine and did not refer the telephone call to a collector or leave on automated message on defendant's behalf. (Id.).  Defendant goes on to state that had it in fact left automated messages on plaintiff's answering machine as she contends, its computer records would indicate "HOME TLDN" to denote "telephoned debtor, left number," not "HOME AUTO VOICE." (Id. at ¶ 21).  A genuine question of fact thus exists as to whether defendant left automated messages on plaintiff's home phone, further precluding judgment as a matter of law.

Finally, plaintiff argues that Letter 283 was deceptive as a matter of law because it was intentionally undated (Pl.'s Mem. in Supp. of Summ. J., at 6), leaving the least sophisticated consumer with no way of knowing how long he or she has to call or when the 10-day deadline expires.  (Id. at ¶ 5).  With regard to intent, plaintiff has offered no proof that the omission of a date was anything other than unintentional, as defendant insists. (Def.'s Mem. in Opp'n. to Pl.'s Mot. for Summ. J., at 11).  Defendant clearly states that it is company policy to date all collection letters (Melton Aff. ¶ 5), and that the omission in Letter 283 occurred despite review by several people during the letter drafting process.  (Id. at ¶¶ 5-16).  Viewing all inferences in light most favorable to the defendant, a triable question of fact exists as to whether the omission of a date in defendant's Letter 283 was intentional.

In support of her claim that the absence of a date rendered Letter 283 deceptive or misleading to the least sophisticated consumer, plaintiff relies on Hartman v. Meridian Fin. Servs., Inc., 191 F. Supp. 2d 1031 (W.D. Wis. 2002). In that case, the United States District Court for the Western District of Wisconsin found that a collection letter threatening the debtor with adverse credit reporting of the debtor's account "approximately 45 days from date of placement" with the collection agency was confusing and misleading under the FDCPA because there would be "no way for the consumer to know what date is the 'date of placement' and, therefore, the consumer cannot count back 'approximately' 45 days from that date to conclude when defendant will report the consumer's account to credit reporting agency." Id. at 1048. That concern is not found here. Because Letter 283 originating in Minnesota would undoubtedly have been mailed only a couple of days before receipt in Connecticut, and because it was postmarked with the date on which it was mailed, the court believes that even the least sophisticated consumer could have a reasonable basis on which to determine or estimate the date of mailing.

Lastly, plaintiff directs the court to Section 36a-647-5 of the Regulations of Connecticut State Agencies, which states in relevant part that "[a] creditor may not engage in any conduct the natural consequence of which to a reasonable person would be to harass or abuse such person in connection with the collection of a

12

debt." Among the conduct prohibited as a violation of this section is "[s]ending any written communication to a consumer debtor which recites the time period within which a debt must be paid to avoid further action but which does not recite the date on which such time period commences." Regs., Conn. State Agencies § 36a-647-5(p) (2004).  But as the regulation states plainly on its face, it governs the conduct of <u>creditors</u>.  Thus, while the conduct of Providian, as a creditor, might be governed by this regulation, the conduct of defendant, as its collection agent, is not.  If plaintiff were possessed of authority to the contrary, she undoubtedly would have called it to the court's attention, but she has not.

For the foregoing reasons, the plaintiff's motion for summary judgment is **DENIED.**


**IT IS SO ORDERED.**

Dated at Hartford, Connecticut this 22nd day of September, 2004.




                                                     **THOMAS P. SMITH**
                                                     **UNITED STATES MAGISTRATE JUDGE**